UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------

STEPHEN BUSHANSKY,

               Plaintiff,

         vs.

CAROLINA TRUST BANCSHARES, INC.,
BRYAN ELLIOTT BEAL, ROSE B.
CUMMINGS, SCOTT C. DAVIS, JERRY L.
OCHELTREE, JOHNATHAN L. RHYNE, JR.,
FREDERICK P. SPACH, JR., RALPH N.
STRAYHORN, III, and JIM R. WATSON,

               Defendants.

--------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

 

Plaintiff Stephen Bushansky ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.     This action is brought by Plaintiff against Carolina Trust BancShares, Inc. ("Carolina Trust" or the "Company") and the members of Carolina Trust's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Carolina Trust will be acquired by Carolina Financial Corporation ("Carolina Financial") (the "Proposed Transaction").

2.      On July 15, 2019, Carolina Trust and Carolina Financial issued a joint press release announcing they had entered into an Agreement and Plan of Merger and Reorganization dated July 15, 2019 (the "Merger Agreement") to sell Carolina Trust to Carolina Financial.  Under the terms of the Merger Agreement, each Carolina Trust stockholder will be entitled to receive either 0.3000 shares of Carolina Financial common stock (the "stock consideration") or $10.57 in cash (the "cash consideration" and together with the stock consideration, the "Merger Consideration") for each share of the Company's common stock, subject to election and proration such that the aggregate consideration will consist of 90% Carolina Financial common stock and 10% cash.  Based on Carolina Financial's closing stock price of $35.62 as of July 12, 2019, the Proposed Transaction is valued at approximately $100.1 million.

3.      On October 28, 2019, Carolina Trust filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Carolina Trust stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the sale process leading to the Proposed Transaction; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James"); and (iii) Raymond James' and Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Carolina Trust's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks

to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Carolina Trust's common stock trades on the NASDAQ Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Carolina Trust.

9.      Defendant Carolina Trust is a North Carolina corporation with its principal executive offices located at 901 East Main Street, Lincolnton, North Carolina 28092.  Carolina Trust is a bank holding company registered under the Bank Holding Company Act of 1956.  Its primary business is to own and control all of the capital stock of Carolina Trust Bank (the "Bank").  The Bank currently maintains a main office located at 901 East Main Street, Lincolnton, North Carolina and 11 full-service branch offices in the Piedmont and Mountain Regions of the Carolinas

to the north and west of Charlotte, North Carolina.  The Company's common stock is traded on the NASDAQ Capital Market under the ticker symbol "CART."

10.     Defendant Bryan Elliott Beal ("Beal") has been President and Chief Executive Officer ("CEO") of the Company since January 2013 and a director of the Company since 2016.

11.     Defendant Rose B. Cummings ("Cummings") has been a director of the Company since 2019.

12.     Defendant Scott C. Davis ("Davis") has been a director of the Company since 2016.

13.     Defendant Jerry L. Ocheltree ("Ocheltree") has been a director of the Company since 2016 and President and CEO of the Bank since 2014.

14.     Defendant Johnathan L. Rhyne, Jr. ("Rhyne") has been a director of the Company since 2016.

15.     Defendant Frederick P. Spach, Jr. ("Spach") has been a director of the Company since 2016.

16.     Defendant Ralph N. Strayhorn, III ("Strayhorn") has been a director of the Company since 2016.

17.     Defendant Jim R. Watson ("Watson") has been a director of the Company since 2016.

18.     Defendants identified in paragraphs 10-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

### OTHER RELEVANT ENTITIES

19.     Carolina Financial is a Delaware corporation with its principal executive offices located at 288 Meeting Street, Charleston, South Carolina 29401.  Carolina Financial is a financial holding company registered under the Bank Holding Company Act of 1956.  Its primary business is to serve as the holding company for CresCom Bank ("CresCom"), a South Carolina state-

chartered commercial bank with 62 branches located throughout the Carolinas. CresCom is primarily engaged in the business of accepting demand deposits and savings deposits insured by the Federal Deposit Insurance Corporation (the "FDIC"), and providing commercial, consumer and mortgage loans to the general public. CresCom operates Crescent Mortgage Company, a wholly-owned subsidiary of CresCom based in Atlanta, Georgia, as a wholesale and correspondent mortgage lender for community banks. Crescent Mortgage Company is licensed to originate loans in 48 states, partnering with community banks, credit unions and mortgage brokers. CresCom also operates Carolina Services Corporation of Charleston, a Delaware financial services company that provides financial processing services to, and otherwise supports the operations of, CresCom and Crescent Mortgage Company. Carolina Financial's common stock is traded on the NASDAQ Capital Market under the ticker symbol "CARO."

## SUBSTANTIVE ALLEGATIONS

**Company Background**

20.      The Company was incorporated under the laws of the State of North Carolina on February 29, 2016, at the direction of the board of directors of the Bank. The Company was formed for the purpose of serving as the bank holding company of the Bank. The Company currently has no operations and conducts no business on its own other than owning the Bank.

21.      The Bank is a North Carolina-chartered commercial bank with its deposits insured by the FDIC up to applicable limits. The Bank was incorporated on December 5, 2000, and began operations on December 8, 2000. On October 15, 2009, the Bank acquired Carolina Commerce Bank, Gastonia, North Carolina ("Carolina Commerce"), with Carolina Commerce being merged with and into the Bank. On January 1, 2019, the Company acquired Clover Community Bankshares, Inc. ("Clover"), the parent holding company for Clover Community Bank, Clover,

South Carolina.  Immediately following the merger of Clover with and into the Company, Clover

Community Bank was merged with and into Carolina Trust Bank, also effective January 1, 2019.

22.     The primary purpose of the Bank is to serve the banking needs of individuals and

businesses in Lincoln, Catawba, Gaston, Iredell and Rutherford Counties and surrounding

areas.  The Bank offers a wide range of banking services including checking and savings accounts;

commercial, installment, mortgage, and personal loans; safe deposit boxes; and other associated

services.  As of December 31, 2018, the Bank served its customers through a network of automated

teller machines and nine full-service offices located in the following North Carolina

cities:  Lincolnton (2), Denver, Forest City, Gastonia, Hickory, Lake Lure, Mooresville and

Vale.  In addition, the Bank operates a loan production office in Salisbury, Rowan County, North

Carolina to serve the lending needs of individuals and businesses located in that market.

23.     On July 30, 2019, the Company reported its financial results for the second quarter

of 2019.  Net income was $1,818,000, or $0.19 per diluted share, compared to net income of

$510,000, or $0.08 per diluted share, for the second quarter of 2018.  Adjusted net income per

diluted share excluding merger expenses, accretion of loan and deposit fair market value

adjustments, and amortization of core deposit intangibles, was $0.20 for the second quarter of

2019, as compared to $0.12 for the second quarter of 2018.  Defendant Ocheltree commented on

the quarter's financial results, stating:

> We are pleased with the results of the second quarter including higher net income
> and improved ROA, ROE, and efficiency ratios following a successful integration
> of the Clover franchise during the first quarter.  We have a stronger team that serves
> a larger portion of the Charlotte MSA and have generated profits for capital support
> of our planned asset growth.

24.     On October 31, 2019, the Company reported its financial results for the third quarter

of 2019.  Net income was $1,427,000, or $0.15 per diluted share, compared to net income of

$915,000, or $0.13 per diluted share, for the third quarter of 2018.  Adjusted net income per diluted share excluding merger expenses, accretion of loan and deposit fair market value adjustments, and amortization of core deposit intangibles, was $0.21 for the third quarter of 2019, as compared to $0.15 for the third quarter of 2018.

**The Proposed Transaction**

25.    On July 15, 2019, Carolina Trust and Carolina Financial issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> Charleston, S.C. & Lincolnton, N.C., July 15, 2019 - Carolina Financial Corporation (Nasdaq: CARO) ("Carolina Financial") and Carolina Trust BancShares, Inc. (Nasdaq: CART), the parent company of Carolina Trust Bank (together, "Carolina Trust") jointly announced today the signing of a definitive merger agreement.
>
> Subject to the terms of the merger agreement, Carolina Trust shareholders will receive 0.3000 shares of Carolina Financial common stock, or $10.57 in cash for each share of Carolina Trust's common stock outstanding, subject to election and proration such that the aggregate consideration will consist of 90 percent Carolina Financial stock and 10 percent cash.  Based on Carolina Financial Corporation's closing stock price of $35.62 as of July 12, 2019, this equates to an aggregate deal value of approximately $100.1 million.
>
> Carolina Trust, which is headquartered in Lincolnton, North Carolina, currently operates 11 banking locations and a loan production office in and around the Charlotte – Concord – Gastonia, NC-SC metropolitan statistical area.  As of March 31, 2019, Carolina Trust reported total assets of $621 million, gross loans of $474 million and deposits of $523 million.
>
> "This transaction allows for Carolina Financial to deepen its market presence in North Carolina. Carolina Trust represents the best opportunity for Carolina Financial to expand our footprint in these markets and the merger will allow us to execute on many of our publicly stated goals," said Jerry Rexroad, Chief Executive Officer of Carolina Financial. "We welcome the Team Members at Carolina Trust to our organization.  This partnership is an excellent opportunity to create value for both institutions." Upon completion of the acquisition, the combined company will have over $4.5 billion in assets, $3.1 billion in loans and $3.3 billion in deposits.  This transaction will further solidify Carolina Financial's position as one of the largest Carolinas-based community banks.
>
> Jerry Ocheltree, President and Chief Executive Officer of Carolina Trust, will be named President of CresCom Bank's North Carolina Commercial Banking

Operations.  "We are excited about partnering with a high-performing company that shares our community banking culture and values like Carolina Financial. We find the strategic fit of the two organizations compelling, especially for our customers that will benefit from the broader array of products and services," commented Jerry Ocheltree.  "We will leverage the new resources and products available to us through CresCom Bank and are attracted to the opportunity to operate in our current markets with a significantly larger scale."

The merger agreement has been unanimously approved by the boards of directors of each company.  The transaction is expected to close in the first quarter of 2020 and is subject to customary conditions, including regulatory approval and Carolina Trust shareholder approval.  Upon completion of the transaction, Mr. Johnathan Rhyne, Carolina Trust's current Chairman of the Board, will be appointed to the Carolina Financial and CresCom Bank boards of directors.

Sandler O'Neill & Partners, LP served as financial advisor and Nelson Mullins Riley & Scarborough LLP provided legal counsel to Carolina Financial.  Raymond James served as financial advisor and Wyrick Robbins Yates & Ponton LLP served as legal counsel to Carolina Trust.

## Insiders' Interests in the Proposed Transaction

26.     Carolina Trust insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Carolina Trust.

27.     Notably, certain Company insiders have secured positions for themselves with the combined company upon consummation of the Proposed Transaction.  For example, following completion of the Proposed Transaction, defendant Ocheltree will be appointed President of North Carolina Commercial Banking for CresCom and defendant Rhyne will become a director of Carolina Financial.

28.     Moreover, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash[1] | Equity | Pension/ NQDC[2] | Perquisites/ Benefits | Tax Reimbursement | Other | Total |
|------|------|--------|------|------|------|-------|-------|
| Jerry L. Ocheltree | $ 1,108,992 | — | $ 393,972 | — | — | — | $ 1,502,964 |
| Edwin E. Laws | 468,943 | — | 75,027 | — | — | — | 543,970 |
| Richard M. Rager | 491,071 | — | 275,989 | — | — | — | 767,060 |

## The Proxy Statement Contains Material Misstatements or Omissions

29.    Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Carolina Trust's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

30.    Specifically, as set forth below, the Proxy Statement fails to provide Company shareholders with material information or provides them with materially misleading information concerning: (i) the sale process leading to the Proposed Transaction; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Raymond James; and (iii) potential conflicts of interest of Raymond James.

### *Material Omissions Concerning the Background Process*

31.    The Proxy Statement fails to disclose material information regarding the background process leading up to the Proposed Transaction.

32.    For example, the Proxy Statement sets forth that on May 21, 2019, Carolina Financial delivered a draft non-binding letter of intent to Carolina Trust that the Board determined, at its May 24, 2019 Board meeting, was not acceptable in its then-current form, and instructed Raymond James to seek clarification on certain issues and to further negotiate the proposed stock exchange ratio. *See* Proxy Statement at 39. The Proxy Statement fails to disclose the terms of the May 21, 2019 letter of intent and the issues identified by the Board that needed clarification.

33.    The Proxy Statement further sets forth that "[a] revised letter of intent was presented to the Carolina Trust board on June 6, 2019, which reflected an increased stock exchange

ratio and sufficiently addressed the other issues that the Carolina Trust board had sought to be clarified or revised." *Id*. at 40.  The Proxy Statement fails to disclose the other issues that the Board had sought to be clarified or revised.

34.     In addition, the Proxy Statement sets for that "[o]n March 27, 2019, the Carolina Trust board met with the President of Bank A . . . and the parties discussed whether there would be mutual interest in a potential business combination." *Id*. at 39.  According to the Proxy Statement, "[t]he preliminary conversations with Bank A regarding any interest in a potential combination terminated on April 30, 2019, without any further developments." *Id*.  The Proxy Statement fails, however, to disclose any details regarding the discussions between the Company and Bank A, including whether Bank A indicated it would be interested in a potential business combination, and the circumstances surrounding the termination of the discussions, including whether the discussions were terminated by the Company or Bank A.

35.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Raymond James' Financial Analyses***

36.     The Proxy Statement describes Raymond James's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Raymond James's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Carolina Trust's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Raymond James's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

37.     With respect to Raymond James's *Selected Companies Analysis* and *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies and transactions observed by Raymond James in the analyses.

38.     With respect to Raymond James's *Discounted Cash Flow Analysis* of Carolina Trust, the Proxy Statement fails to disclose: (i) the financial metric Raymond James discounted back to present value which formed the basis of its analysis and, to the extent not already disclosed, the values of that metric over the projection period; (ii) quantification of the inputs and assumptions underlying the discount rate range of 11.5% to 15.5%; and (iii) the implied perpetuity growth rates resulting from the analysis.

39.     The omission of this information renders the statements in the "Opinion of Carolina Trust's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Potential Conflicts of Interest of Raymond James***

40.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Raymond James.

41.     The Proxy Statement sets forth:

In the previous two years: (i) Raymond James provided financial advisory services to Carolina Trust in connection with the acquisition of Clover Community Bankshares, Inc., for which it was paid a fee; (ii) Raymond James provided fixed income trading services to Carolina Trust Bank for which it has been paid trading commissions; (iii) Raymond James served as underwriter for a public offering of common stock by Carolina Financial and certain selling stockholders, for which Raymond James received compensation; (iv) Raymond James has served and is serving as exclusive agent for a share repurchase program of Carolina Financial, for which it has been paid commissions and may be paid commissions in the future; (v) Raymond James provided fixed income trading services to CresCom Bank for which it has been paid trading commissions; and (vi) CresCom Bank made an investment in a Raymond James tax credit fund, for which Raymond James has earned a fee and will earn additional fees in the future. For these aforementioned services, Raymond James has received, in aggregate in the previous two years, fees of $314,600 from Carolina Trust and Carolina Trust Bank and fees of $1,162,219

> from Carolina Financial and CresCom Bank. Additionally, Raymond James has earned but not yet received fees relating to CresCom Bank's investment in a Raymond James tax credit fund. Raymond James may provide investment banking, financial advisory and other financial services to Carolina Trust and/or Carolina Financial or other participants in the merger in the future, for which Raymond James may receive compensation.

*Id*. at 54-55.  The Proxy Statement fails, however, to disclose the fees earned and expected to be earned by Raymond James relating to CresCom Bank's investment in a Raymond James tax credit fund.

42.      Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection and implementation of strategic alternatives.

43.      The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Carolina Trust insiders.

44. For example, the Proxy Statement sets forth:

> Employment Agreement for Mr. Ocheltree. In connection with entering into the merger agreement, Carolina Financial has entered into an employment agreement with Mr. Ocheltree that will be effective upon consummation of the merger . . . . Mr. Ocheltree will serve as CresCom Bank's President of North Carolina Commercial Banking. The term of Mr. Ocheltree's employment will begin upon the closing of the merger and continue for two years thereafter, unless otherwise terminated as provided in the agreement. On the first anniversary of the merger closing, and at each anniversary date thereafter, the agreement will automatically renew for an additional year unless either party provides notice of nonrenewal at least thirty days prior to the anniversary date.

*Id.* at 59.  Yet, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Carolina Financial and Carolina Trust's management, including who participated in all such communications, when they occurred and their content.   The Proxy Statement further fails to disclose whether any of Carolina Financial's prior proposals or indications of interest mentioned

management retention with the combined company.

45.    Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.    The omission of this information renders the statements in the "Opinion of Carolina Trust's Financial Advisor," "Background of the Merger," and "Interests of Executive Officers and Directors of Carolina Trust in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information, Plaintiff and the other Carolina Trust stockholders will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

48.    Plaintiff repeats all previous allegations as if set forth in full.

49.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the sale process leading to the Proposed Transaction, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Raymond James and potential conflicts of interest of Raymond James and Company insiders.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

52.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

54.     Plaintiff repeats all previous allegations as if set forth in full.

55.     The Individual Defendants acted as controlling persons of Carolina Trust within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Carolina Trust, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-

9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Carolina Trust's stockholders will be irreparably harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Carolina Trust, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Carolina Trust stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 27, 2019

**WEISSLAW LLP**

By

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*